**SO ORDERED.**

**SIGNED this 16th day of October, 2023.**



_____
Mitchell L. Herren
United States Bankruptcy Judge
_____

DESIGNATED FOR ONLINE PUBLICATION ONLY

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| LARRY A. CREASON | ) | |
| SARA L. CREASON, | ) | Case No. 22-10116 |
| | ) | Chapter 7 |
| Debtors | ) | |
| | ) | |
| LISA JOHNSON | ) | |
| Plaintiff, | ) | |
| vs. | ) | Adv. No. 22-5017 |
| | ) | |
| LARRY A. CREASON and | ) | |
| SARA L. CREASON, | ) | |
| Defendants. | ) | |

## ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Defendants Larry and Sara Creason seek to discharge a 2013 default

judgment for fraud entered against them in a Kansas state court lawsuit where

Plaintiff Lisa Johnson alleged fraud and breach of contract arising out of a series of short-term loans Defendants received from Plaintiff but failed to repay. In this adversary proceeding, Plaintiff contends the judgment debt from the 2013 default should be excepted from discharge under 11 U.S.C. § 523(a).[1]

Plaintiff seeks summary judgment, arguing the entirety of the debt ($72,520.86 plus interest, court costs, and attorney fees) is nondischargeable under §§ 523(a)(2)(A) (the "fraud" exception) and (a)(6) (the willful and malicious injury exception). Plaintiff contends Defendants are barred under the doctrines of collateral estoppel, judicial estoppel, and quasi estoppel from relitigating the factual issues surrounding fraud because the state court findings in a 2013 journal entry of judgment ("Default Judgment"), and later, a 2015 default order enforcing a settlement ("Order"), satisfy the elements of the fraud and willful and malicious injury discharge exceptions.

Defendants do not dispute that the state court entered the Default Judgment and Order against them. They do, however, deny that the state court's findings are sufficient to prevent this Court from hearing their vehement and detailed arguments that their inability to pay Plaintiff was based on circumstances outside their control that were unknown at the time they borrowed the money, and that their conduct was therefore not fraudulent or willful and malicious.

For the reasons set forth below, the motion is denied.[2]

_____

[1] All future statutory references in text, unless otherwise noted, are to Title 11 of the United States Code (the "Bankruptcy Code").
[2] Michael A. Priddle appeared on behalf of Plaintiff. Mark Lazzo appeared on behalf of Defendants.

2

# I.    SUMMARY JUDGMENT STANDARDS

Summary judgment is appropriate where the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.[3] In ruling on a motion for summary judgment, a court must draw all reasonable inferences from the record in favor of the non-moving party.[4] If the movant can establish a prima facie case, the burden shifts to the non-moving party to identify specific evidence that demonstrates there is a genuine issue of material fact for trial, or the undisputed facts do not establish a sufficient legal basis to grant movant judgment as a matter of law.[5] A genuine dispute of material fact exists if, based on the evidence, a reasonable jury could return a verdict for the non-moving party.[6] If a party that bears the burden of persuasion at trial does not come forward with sufficient evidence on an essential element of its prima facie case, all issues concerning all other elements of the claim and any defenses become immaterial.[7]

The rules and procedure for summary judgment motions, as relevant here, are set forth in Fed. R. Civ. P. 56(c) and D. Kan. LBR 7056.1. They require that each separately numbered statement of fact be supported by citation to materials in the record and be

---

[3] FED. R. CIV. P. 56(a) is made applicable to this adversary proceeding by FED. R. BANKR. P. 7056.

[4] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

[5] FED. R. CIV. P. 56(a). *See Langley v. Adams Cty.*, 987 F.2d 1473, 1476 (10th Cir. 1993); *Friesen v. Seacoast Cap. Partners II, L.P. (In re QuVis, Inc.),* 446 B.R. 490, 493-94 (Bankr. D. Kan. 2011) (finding that even if there are no disputed material facts, movant has burden to show that those facts entitle movant to judgment as a matter of law); *Adler v. Wal-Mart Stores, Inc.,* 144 F.3d 664, 670 (10th Cir. 1998).

[6] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

[7] *Adler,* 144 F.3d at 670 (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986)).

3

presented by affidavit, declaration under penalty of perjury, and/or through the use of relevant portions of pleadings, depositions, answers to interrogatories and responses to requests for admissions. . . . Where facts referred to in an affidavit or declaration are contained in another document . . . a copy of the relevant excerpt from the document must be attached.[8]

Plaintiff's paragraphs 8-11 and 13-16 of her uncontroverted facts contain no citation to the record. Plaintiff's record support for her other statements of facts consist of three exhibits, mostly court records or pleadings in the state court action: Exhibit A – the state court petition for breach of contract and fraud filed July 10, 2013 (which includes the Default Judgment entered August 8, 2013 attached thereto as part of Exhibit A to the petition);[9] Exhibit B – the Plaintiff's post-judgment motion to enforce settlement filed September 16, 2015 (which includes correspondence and various e-mail threads between Plaintiff's counsel and Defendants numbered as Exhibits 1-5);[10] and Exhibit C – the order granting Plaintiff's motion to enforce settlement entered October 2, 2015.[11]

The proper way to present these materials would have been with an affidavit identifying and authenticating the court records and the extraneous correspondence and e-mails and attaching those materials to the affidavit. It is also incumbent upon a litigant to "refer with particularity to those portions of the record on which the movant relies."[12] It is not the Court's job to sift through multiple page exhibits to find the supporting record cite.

---

[8] LBR 7056.1(d). *See also* Rule 56(c)(1).
[9] Doc. 23, pp. 15-29. The Default Judgment appears to be included twice. *Id.* at pp. 26-29.
[10] Doc. 23, pp. 30-50.
[11] Doc. 23, pp. 51-54.
[12] LBR 7056.1(a).

4

Defendants' statement of additional uncontroverted facts contained in their summary judgment response is properly supported by affidavit and complies with LBR 7056.1(b)(2). To the extent Plaintiff simply says she "denies" or controverts those additional facts, she has failed to adequately controvert the fact as required by LBR 7056.1(c) and (b)(1).

In the end, Plaintiff's noncompliance with the summary judgment rules and procedure is not dispositive. Much of the information the parties presented about interactions they had after the Default Judgment was entered against Defendants is neither material, nor relevant to the Court's determination of dischargeability. There is only one debt in question, and it is evidenced by the state court Default Judgment; it is based upon Defendants' alleged misrepresentations prior to Plaintiff lending the money.[13]

## II.   UNCONTROVERTED MATERIAL FACTS

In 2012, Defendants ran a painting business, Kansas Painting Solutions, that entered into an out-of-state painting contract with a Tennessee contractor for a large painting job on a building in Tennessee. The contract was a significant undertaking that required Defendants to obtain third party funding for labor and

---

[13] *See* 11 U.S.C. § 101(12) defining a "debt" as "liability on a claim." To be nondischargeable under § 523(a)(2)(A), the debt must be one arising from *money* debtors *obtained by fraud. See e.g., Daniel v. Boyd (In re Boyd),* 347 B.R. 349, 356-57 (Bankr. W.D. Ark. 2006) (debtor-contractor who misrepresented that he was a licensed contractor could not except debt from discharge where the debt was the result of poor workmanship, not one arising from debtor's fraud); *Macaulay v. Shields (In re Shields),* 147 B.R. 627, 629-30 (Bankr. D. Mass. 1992) (state court judgment against developer for deceptive and unfair act was dischargeable where developer made misrepresentations after judgment creditors had already parted with money to purchase time share and thus, developer had not "obtained money" by means of false representations).

5

materials. In February and March of 2012, Defendants approached Plaintiff requesting a series of three short-term loans totaling a principal amount of $53,000 with a repayment date of May 31, 2012. The sum due on May 31 was $69,040, which included $3,040 in interest, $10,000 for penalties and taxes Plaintiff incurred in withdrawing $33,000 of the loaned funds from her annuity, and repayment of a $3,000 check "given" to Defendants in October of the previous year (apparently not part of the three loans at issue in the lawsuit).

Defendants submitted their first payment application of $73,815 to the Tennessee contractor in mid-March. The contractor refused to pay, arguing that Defendants' work was deficient. Defendants, through counsel, filed an arbitration action in Tennessee as required by the contract but the dispute was not resolved until January of 2013, after significant legal fees and for a greatly reduced amount. Defendants failed to repay Plaintiff's loan at the end of May, 2012.

On July 10, 2013, Plaintiff sued the Defendants and their now defunct painting company in Sedgwick County District Court for "fraud" and "breach of contract."[14] The Plaintiff alleged that the Defendants had no intention to repay the loan and made false representations as to their company's financial situation to induce her to loan them the money. Specifically, Plaintiff alleged that Defendants represented:

- the loans were necessary to complete a painting job;

- they had sufficient work and ability to pay;

---

[14] Doc. 23, Ex. A, pp. 15-25.

Case 22-05017    Doc# 27    Filed 10/16/23    Page 6 of 31

- they had incoming receivables to quickly repay any money borrowed; and

- it was their intention to quickly repay the Plaintiff.[15]

These representations, the Plaintiff alleged, were fraudulent, stating that the

Defendants':

> [M]aterial representations and promises regarding ability to pay, pending work, incoming receivables, intention to pay, and need for money were false when made, or made with reckless disregard for the truth, and were made solely to induce Plaintiff into the agreement to lend them money.[16]

Defendants failed to answer the petition or contest the action, believing that

the state court action was for recovery of money they admittedly owed, not fully

understanding the gravity of the fraud allegations.[17] On August 8, 2013, counsel for

Plaintiff submitted to the state court the proposed Default Judgment (*i.e.,* Journal

Entry of Judgment) and it was signed and entered by the state court.[18] It provided:

> 3.     The allegations in Plaintiff's Petition are uncontroverted. Defendants have admitted the allegations in Plaintiff's Petition pursuant to K.S.A. § 60-208(d). [sic]. *The allegations in Plaintiff's Petition, which are herein found to be true and incorporated by reference as if fully set out, are the findings of fact by the Court to support this judgment.*[19]

---

[15] Doc. 23, Ex. A, p. 16, ¶¶ 8-10.

[16] Doc. 23, Ex. A, p. 17, ¶ 17. Under the fraud count, Plaintiff similarly alleged: "Defendants made false representations and promises to Plaintiff of material fact, or made them with reckless disregard for their truth, solely to induce the Plaintiff to give them money." *Id.* at 25.

[17] Doc. 24, p. 6, ¶ 18.

[18] Doc. 23, Ex. A, pp. 26-27. The Default Judgment does not reflect that a hearing was held on August 8; it was entered upon the Plaintiff's motion or application for default judgment as permitted under Kansas law.

[19] Doc. 23, Ex. A, p. 26, ¶ 3 (emphasis added.). The correct statutory cite in paragraph 3 is 2022 Supp. K.S.A. 60-208(a)(6) *Effect of failing to deny.*

This was the extent of the factual findings made by the state court. The allegations of the Plaintiff's petition were not detailed in the Default Judgment. Based on these findings, the state court concluded Plaintiff was entitled to judgment against Defendants "for fraud in the amount of relief sought in Plaintiff's Petition."[20]

The analysis of the legal issues surrounding dischargeability, which are dependent in large part on the actual findings of the state court, is made more difficult by the fact that in the Plaintiff's statement of uncontroverted facts in her summary judgment motion, two separate paragraphs supposedly reciting the state court's detailed, incorporated factual findings actually omitted key language from the findings. For example, in Uncontroverted Fact 2(K), Plaintiff incompletely summarized the state court's key finding as follows:

> [Defendants'] material representations and promises regarding ability to pay, pending work, incoming receivables, intention to pay, and need for the money were false when made and were made solely to induce [Plaintiff] into the agreement to lend them money.[21]

Conspicuously absent from this "finding" set forth as an uncontroverted fact is the portion of that paragraph where Plaintiff alleged that the representations were false when made, "*or made with reckless disregard for the truth*."[22] That is the complete allegation the state court incorporated as its finding.

A similar edit was made in Uncontroverted Fact 2(O): "Debtors made false representations and promises to [Plaintiff] of material fact solely to induce

---

[20] Doc. 23, Ex. A, p. 26, ¶ 4.
[21] Doc. 23, p. 3.
[22] Doc. 23, p. 17, Ex. A, ¶ 17.

[Plaintiff] to give them money."[23] The complete allegation that was adopted as a finding in the state court's Default Judgment from paragraph 25 of the petition states: "Defendants made false representations and promises to Plaintiff of material fact, *or made them with reckless disregard for their truth,* solely to induce [Plaintiff] to give them money."[24]

In 2015, as Plaintiff was pursuing collection efforts the Defendants came before the state court on citations for contempt. During a recess at the contempt hearing, the parties discussed a settlement agreement, the contents of which are in dispute. It was agreed that the Plaintiff would draft and send a payment agreement (the "Settlement") to the Defendants to sign as agreed. Shortly after the contempt hearing, Plaintiff sent Defendants the payment plan, but Defendants refused to sign.[25]

Then, on September 16, 2015, the Plaintiff filed a motion to enforce the parties' purported Settlement, and the hearing was set for October 2, 2015.[26] On the day of the hearing, the Defendants did not appear, and the state court granted the Plaintiff's motion. The Order entered October 2, 2015, provides in part:

> 4. On July 24, 2015, the parties agreed to a payment plan . . .whereby the Defendants agreed: (a) that the judgment debt was nondischargeable; … (d) that Plaintiff's counsel would memorialize the reached agreement in writing and send it to Defendants to execute and return and (e) that Plaintiff would suspend collection efforts once the

---

[23] Doc. 23, p. 4.
[24] Doc. 23, Ex. A, p. 17, ¶ 25 (emphasis added).
[25] Doc 24, ¶ 25. The Plaintiff, in her reply brief, "denies" this fact; however, denials without any support do not meet the standard of controverting a purported uncontroverted fact in a summary judgment motion; thus, the facts that Plaintiff "denied" will be treated as uncontroverted for purposes of summary judgment. *Supra* note 8-12.
[26] Doc. 23, Ex. B, pp. 30-34.

payment plan was signed and as long as Defendants were in compliance therewith. . . .[27]

11. 7 – [Defendants] understand, stipulate and agree that: (a) the allegations, claims and debt set out in the underlying judgment of Sedgwick County Case 2013 CV 2059 have been and herein are again admitted and such may be used as admissions against [Defendants] in any subsequent proceeding; (b) the findings of the state court case regarding the admitted conduct of [Defendants] shall be barred from collateral attack in any bankruptcy proceeding . . . (c) the debt owed to [Plaintiff] . . . is nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A) and (a)(4) . . .[28]

After the entry of the Order, the Defendants made seventy-nine (79) "voluntary and involuntary payments" on the debt[29] and continued to do so until they filed for bankruptcy on February 28, 2022. The Defendants did not reaffirm their judgment debt in the bankruptcy. Plaintiff then filed this adversary proceeding requesting the Court to determine that the state court Default Judgment is nondischargeable under § 523 and grant her subsequently filed motion for summary judgment.

## III.   ANALYSIS

### A.   Jurisdiction, Venue, and Burden of Proof

The Court has jurisdiction over this nondischargeability adversary proceeding as a core proceeding arising under title 11,[30] and venue is proper.[31]

---

[27] Doc. 23, Ex. C, pp. 51-52, ¶ 4.
[28] Doc. 23, Ex. C, pp. 53-54, ¶ 11.
[29] Doc 23, p. 6, ¶ 9. Neither party stated the amounts of these payments, or whether they did or did not comport with the changing payment amounts that would have been required by the terms of the written settlement agreement letter presented to Defendants.
[30] 28 U.S.C. §§ 1334(b), 157(b)(1), (2)(I) (a determination "as to the dischargeability of particular debts" is a core proceeding).
[31] 28 U.S.C. § 1409.

Exceptions to discharge are to be narrowly construed, with doubt being resolved in the debtor's favor.[32] The creditor seeking to except a debt from discharge bears the burden of proving each element of its claim by a preponderance of the evidence.[33]

### B. Nondischargeability in General

Plaintiff argues the state court findings in the Default Judgment and the stipulations and admissions in the Settlement and Order meet the elements of fraud and willful and malicious injury under § 523(a)(2)(A) and (a)(6), and under the doctrines of estoppel, Defendants cannot contest those findings before this Court.[34] The Court will first discuss the elements of these discharge exceptions, then discuss the merits of the Plaintiff's argument under the doctrines of estoppel.

#### 1. The Fraud Discharge Exception: False Pretenses, False Representation, or Actual Fraud under § 523(a)(2)(A)

Section 523(a)(2)(A) provides:

> A discharge under section 727 ... of this title does not discharge an individual debtor from any debt — ... (2) for money ... to the extent obtained by — (A) false pretenses, a false representation, *or* actual fraud, other than a statement respecting the debtor's . . . financial condition; (emphasis added).

---

[32] *Bellco First Fed. Credit Union v. Kaspar (In re Kaspar),* 125 F.3d 1358, 1361 (10th Cir. 1997). Bankruptcy's central purpose is to provide the honest debtor with a fresh start. *Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 366 (2007) (quoting *Grogan v. Garner*, 498 U.S. 279, 287 (1991)). Because of this principle, the exceptions to discharge should be narrowly construed. *DSC Nat'l Props., LLC v. Johnson (In re Johnson)*, 477 B.R. 156, 168 (10th Cir. BAP 2012).

[33] *Grogan,* 498 U.S. at 287-88.

[34] Though Plaintiff asserted nondischargeability under § 523(a)(4) (fiduciary fraud) in the adversary complaint and (a)(4) was also listed in the purported settlement agreement as a basis of nondischargeability, the complaint was devoid of any allegation that defendants committed fraud while acting in a requisite fiduciary capacity. *See Hawks Holdings, LLC v. Kalinowski (In re Kalinowski),* 482 B.R. 334, 338 (10th Cir. BAP 2012) (qualifying fiduciary relationship under § 523(a)(4) exists when debtor has been entrusted with money pursuant to an express or technical trust). Plaintiff does not pursue an (a)(4) claim in this summary judgment motion.

A plaintiff creditor can sustain a claim under this subsection by proving any one of these three categories. While the specific requirements of each may differ, a shared requirement of all three is the debtor's intent to defraud a creditor.[35]

Under subsection (a)(2)(A), false representations are commonly litigated fraudulent acts. To sustain a claim for false representation, the claimant must prove by a preponderance of the evidence:[36] 1) that the debtor made a false representation; 2) with the intent to deceive the creditor; 3) the creditor relied on the false representation; 4) the creditor's reliance was [justifiable]; and 5) the creditor was damaged as a result.[37]

In contrast, false pretenses are implied misrepresentations intended to create and foster a false impression, and this may include conduct and material omissions, as opposed to express misrepresentations.[38] Some courts have defined false pretenses as "any series of events, when considered collectively, that create a contrived and misleading understanding of a transaction, in which a creditor is wrongfully induced to extend money or property to the debtor."[39]

---

[35] *Houston v. Munoz (In re Munoz),* 536 B.R. 879, 884 (Bankr. D. Colo. 2015); *MidFirst Bank v. Rodriguez (In re Rodriguez),* Adv. No. 20-01047, 2021 WL 3083649, at *9 (Bankr. W.D. Okla. July 21, 2021).

[36] *Grogan,* 498 U.S. at 287-88.

[37] *Bank of Cordell v. Sturgeon (In re Sturgeon),* 496 B.R. 215, 222–23 (10th Cir. BAP 2013) (citing *Fowler Bros v. Young (In re Young),* 91 F.3d 1367, 1373 (10th Cir.1996); *Field v. Mans,* 516 U.S. 59, 60 (1995) (changing the standard of reliance under 11 U.S.C. § 523(a)(2)(A) from "reasonable" to "justifiable."); *Johnson v. Riebesell (In re Riebesell),* 586 F.3d 782, 791–92 (10th Cir. 2009) (same)).

[38] *Sturgeon,* 496 B.R. at 223 (citing *Young,* 91 F.3d at 1374-75 (citations omitted)).

[39] *Id.* (citing *Stevens v. Antonious (In re Antonious),* 358 B.R. 172, 182 (Bankr. E.D. Pa. 2006)).

The final category under subsection (a)(2)(A) is actual fraud.[40] As the Tenth Circuit BAP in *Sturgeon* recognized, actual fraud occurs "when a debtor intentionally engages in a scheme to deprive or cheat another of property or a legal right."[41] It is different from "implied" fraud, or fraud "in law," which describe acts of deception that "may exist without the imputation of bad faith or immorality." Anything that counts as "fraud" and is done with fraudulent intent is "actual fraud."[42] It does not require a false representation.

### 2. Willful and Malicious Injury under § 523(a)(6)

Section 523(a)(6) excepts debts for "willful and malicious injury by the debtor…" This type of injury is akin to intentional torts,[43] and negligent or reckless conduct is insufficient.[44] Proof of both a willful act and a malicious injury are required to establish the claim.[45] "For an injury to be 'willful,' there must be a deliberate or intentional injury, not merely 'a deliberate or intentional act that

---

[40] *Husky Intern. Electronics, Inc. v. Ritz,* 578 U.S. 355, 359 (2016) (finding that actual fraud is a distinct category under § 523(a)(2)(A) and can be effected without a false representation, such as a fraudulent conveyance).

[41] *Sturgeon,* 496 B.R. at 223 (citing *Diamond v. Vickery (In re Vickery),* 488 B.R. 680, 691 (10th Cir. BAP 2013) (holding that actual fraud is an independent basis for nondischargeability and is not limited to representations and misleading omissions)).

[42] *Husky Intern. Electronics, Inc.,* 578 U.S. at 360 (citations omitted); *see also McClellan v. Cantrell,* 217 F.3d 890, 894 (7th Cir. 2000) ("The fraud exception to the dischargeability of debts in bankruptcy does not reach constructive frauds, only actual ones. . . .")

[43] *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998) ("[T]he (a)(6) formulation triggers in the lawyer's mind the category 'intentional torts,' as distinguished from negligent or reckless torts.").

[44] *Id.* at 64 ("Negligent or reckless acts, the Court held, do not suffice to establish that a resulting injury is 'willful and malicious.'").

[45] *Panalis v. Moore (In re Moore),* 357 F.3d 1125, 1129 (10th Cir. 2004) ("The district court overlooked the criticality of the terms 'willful' act and 'malicious injury' in § 523(a)(6). Without proof of *both*, an objection to discharge under that section must fail.").

13

leads to injury.'"[46] "For an injury to be 'malicious,' 'evidence of the debtor's motives, including any claimed justification or excuse, must be examined to determine whether the requisite 'malice' in addition to 'willfulness' is present.'"[47] Malicious behavior is both intentional and wrongful.[48]

      C.    <u>Collateral Estoppel and § 523(a) Dischargeability of Default Judgment</u>

          1.    Full Faith and Credit Considerations

Plaintiff argues that the doctrine of collateral estoppel, also known as issue preclusion, should require this Court to rely on the Default Judgment conclusory finding of "fraud" as a sufficient basis for excepting the debt from discharge under § 523(a). Collateral estoppel may be invoked in dischargeability proceedings in bankruptcy to bar relitigation of factual issues previously decided in other courts.[49] The purpose of the collateral estoppel doctrine is to protect the parties from multiple lawsuits, prevent the possibility of inconsistent decisions, and conserve judicial resources.[50]

---

[46] *First Am. Title Ins. Co. v. Smith (In re Smith)*, 618 B.R. 901, 912 (10th Cir. BAP 2020) (quoting *Kawaauhau*, 523 U.S. at 61).

[47] *In re Smith*, 618 B.R. at 919 (quoting *Dorr, Bentley & Pecha v. Pasek (In re Pasek)*, 983 F.2d 1524, 1527 (10th Cir. 1993)).

[48] *Nelson v. Bolles (In re Bolles)*, 593 B.R. 832, 843 (Bankr. D.N.M. 2018) ("For a debtor's actions to be malicious, it must be intentional, wrongful, and done without justification or excuse.").

[49] *Grogan,* 498 U.S. at 284 n.11; *see also Sil–Flo, Inc. v. SFHC, Inc.,* 917 F.2d 1507, 1520 (10th Cir.1990) ("Under collateral estoppel, 'once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case.") (quoting *Allen v. McCurry,* 449 U.S. 90, 94 (1980))<u>.</u>

[50] *Cobb v. Lewis (In re Lewis)*, 271 B.R. 877, 883 (10th Cir. BAP 2002) (citing *Montana v. United States,* 440 U.S. 147, 153 (1979)).

14

Since the relevant judgment in this case was the Default Judgment from a Kansas state court, the Full Faith and Credit statute requires this Court to apply Kansas collateral estoppel law. The Full Faith and Credit Statute[51] directs a federal court to look to the preclusion law of the state in which the judgment was rendered, unless an exception applies.[52] The Tenth Circuit has not found any "countervailing statutory policy which would prevent application of the doctrine."[53] Therefore, even though this Court ultimately decides whether a debt is dischargeable under § 523,[54] it must apply Kansas preclusion law to determine whether the findings in the Default Judgment are entitled to preclusive effect.

### 2. Kansas Collateral Estoppel Law

Under Kansas law, collateral estoppel may be invoked to bar litigation when: (1) the prior judgment was a judgment on the merits which determined the rights and liabilities of the parties on the issue, based upon ultimate facts as disclosed by the pleadings and judgment; (2) the parties are the same or in privity; and (3) the issue litigated was actually determined and was necessary to support the judgment.[55] Only the first and third elements are at issue in this case.

---

[51] 28 U.S.C. § 1738 provides in pertinent part: "records and judicial proceedings [of any court of any such State] . . . shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken."

[52] *Marrese v. Am. Academy of Orthopaedic Surgeons,* 470 U.S. 373, 380 (1985).

[53] *Klemens v. Wallace (In re Wallace),* 840 F.2d 762, 764-65 (10th Cir. 1988).

[54] *Id.* at 764.

[55] *In re Application of Fleet for Relief from a Tax Grievance in Shawnee Cnty.,* 293 Kan. 768, 778, 272 P.3d 583 (2012); *Phelps v. Hamilton,* 122 F.3d 1309, 1318 (10th Cir. 1997) (citing *Jackson Trak Group, Inc. v. Mid States Port Auth.,* 242 Kan. 683, 690 (1988)); *McCain Foods USA v. Shore (In re Shore),* 317 B.R. 536, 541 (10th Cir. BAP 2004).

15

Kansas law gives default judgments preclusive effect as a judgment on the merits, satisfying the first prong in this analysis. The Kansas Supreme Court has held that a default judgment is as conclusive against a defendant as if the defendant had appeared and contested the claim.[56] The Kansas Court of Appeals reiterated this standard, finding that, "[o]ur Supreme Court has repeatedly held that a party may not collaterally attack a default judgment."[57] For example, in *City of Eudora v. French*, the court stated:

> Where, as here, a court has jurisdiction of the parties to the action and of the subject matter, and renders a judgment within its competency, even if erroneous, that judgment is final and conclusive unless corrected or modified on appeal or by such other method as may be prescribed by statute and it may not be collaterally attacked otherwise.[58]

Therefore, the Default Judgment is considered a judgment on the merits, and the fact it was a default will not bar the application of collateral estoppel.

Under the third element of Kansas collateral estoppel law, the judgment will be given preclusive effect if the issues needed to establish the current claim were actually determined by the state court in the previous case. "The Kansas Supreme Court has held the doctrine of collateral estoppel may be invoked 'only as to

---

[56] *Miller v. Miller,* 107 Kan. 505, 192 Pac. 747 (1920) ("[A] judgment by default, where there is actual notice to the defendant, is as conclusive against him upon every matter admitted by the default as if he had personally appeared and contested the plaintiff's right to recovery."); *see also State v. Showalter,* 189 Kan. 562, 568-69, 370 P.2d 408 (1962); *McLaughlin v. McGrew,* 118 Kan. 337, 337, 234 P. 1002 (1925).

[57] *Banister v. Carnes,* 9 Kan. App. 2d 133, 138, 675 P.2d 906 (1983).

[58] *City of Eudora v. French*, 204 Kan. 258, 265, 461 P.2d 762 (1969); *see also Banister,* 9 Kan. App. 2d at 138; *see generally Harris v. Byard (In re Byard)*, 47 B.R. 700, 706 (Bankr. M.D. Tenn. 1985) (applying Kansas law); *In re Estate of Johnson,* 180 Kan. 740, 746-47, 308 P.2d 100 (1957).

questions and issues shown to have been *actually decided* in the prior action.'"[59] Stated differently, "where a second action between the same parties is upon a different claim or demand, the judgment in the prior action operates as an estoppel only as to those matters in issue upon the determination of which the finding was made or the judgment rendered. . . ."[60] Yet, a finding of common law fraud by the state court is not always dispositive of the dischargeability question.[61] Therefore, the Court must compare the elements of fraud under Kansas law to the elements under § 523(a)(2)(A) to determine if the "issue" of fraud as defined by federal bankruptcy law was actually determined in the Default Judgment.

### 3. Kansas Fraud

In Kansas, the elements of common law fraud are commonly described to include: (1) an untrue statement of fact; (2) known to be untrue by the party making it; (3) made with the intent to deceive *or with reckless disregard for the truth*; (4) upon which another party justifiably relies; and (5) acts to his or her detriment.[62]

---

[59] *Phelps,* 122 F.3d at 1320 (emphasis in original) (quoting *Frey v. Inter–State Sav. & Loan Ass'n of Kansas City,* 226 Kan. 419, 422, 601 P.2d 671 (1979)).

[60] *Stroup v. Pepper,* 69 Kan. 241, 241, 76 P. 825 (1904).

[61] *In re Vickery,* 488 B.R. at 691 ("[t]he term 'fraud' as used in § 523(a)(2)(A) means actual or positive fraud rather than fraud implied by law") (alteration in original) (quoting *Watson v. Parker (In re Parker)*, 264 B.R. 685, 699 (10th Cir. BAP 2001), *aff'd,* 313 F.3d 1267 (10th Cir. 2002); *see also KC Coring & Cutting Constr., Inc. v. McArthur (In re McArthur)*, 391 B.R. 453, 458 (Bankr. D. Kan. 2008) (holding that the creditor must prove actual fraud not just fraud created by state statute).

[62] *Bomhoff v. Nelnet Loan Services, Inc.,* 279 Kan. 415, 422, 109 P.3d 1241 (2005) (quoting *Alires v. McGehee,* 277 Kan. 398, Syl. ¶ 3, 85 P.3d 1191 (2004)); *Kucharski-Berger v. Hill's Pet Nutrition, Inc.,* 60 Kan. App. 2d 510, 523, 494 P.3d 283 (Kan. App. 2021); *Spear v. Mayes,* No. 123,714, 2022 WL 4003790, at *10 (Kan. App. Sept. 2, 2022); *Ballou v. United Parcel Serv., Inc.,* No. 20-2640, 2023 WL 130542, at *6 (D. Kan. Jan. 9, 2023); *Kelly v. Vinzant,* No. 94,648, 2007 WL 1239300, at *4 (Kan. App. Apr. 27, 2007) (stating the elements as above. On appeal, the Kansas Supreme Court recited these elements slightly

17

Comparing the elements of Kansas common law fraud to the requirements of § 523(a)(2)(A), the Court finds that the third prong of collateral estoppel is not met because an essential requirement of nondischargeability, intent, was not determined in the state court proceedings. As previously discussed, the three types of § 523(a)(2)(A) "fraud" include false representations, false pretenses, and actual fraud,[63] and all three require proof of an *intent to deceive*, or *intent to defraud* the other party.[64] However, Kansas fraud can be proven without such proof. Indeed, nowhere in her state court petition did the Plaintiff allege that the Defendants *knew* that their representations were false at the time they were made or that defendants had an intent to deceive or defraud. Instead, the fraud allegations in paragraphs 17 and 25 provide for two alternatives:

> [17] "Defendants [sic] material representations and promises … *were false when made, **or made with reckless disregard for the truth,** and were made solely to induce Plaintiff into the agreement to lend them money."

> [25] "Defendants made false representations and promises to Plaintiff of material fact, ***or made them with reckless disregard for their truth,*** solely to induce the Plaintiff to give them money."[65]

---

differently, but indicated the court of appeals had correctly enumerated the elements, and also cited *Bomhoff. See Kelly v. VinZant,* 287 Kan. 509, 515, 197 P.3d 803 (2008)).

[63] *See supra,* n.37-42.

[64] *Id.*, and n. 35.

[65] Doc. 23, Exhibit A, p. 17 (emphasis added). The Court is troubled by the fact that the phrase "reckless disregard for the truth" appears to have been purposefully omitted from Plaintiff's uncontroverted facts. *See* Doc. 23, ¶ 2(K), (O)7-8. These "uncontroverted" fact findings were *not* the state court's findings. Instead, the Default Judgment incorporated the allegations of the state court petition, which, as quoted above, included allegations of reckless disregard for the truth, as an alternative to a knowing and intentional deception.

18

The summary judgment record lacks any allegation or supporting admissible evidentiary documentation that the state court held any type of hearing or made any supplemental findings of fact to rule out the possibility that defendants' representations were made with only reckless disregard, as opposed to being knowingly false, with an intent to deceive or defraud. Since the state court's Default Judgment does not unequivocally find that Defendants intended to deceive or defraud Plaintiff, an essential element of a § 523(a)(2)(A) claim is lacking, making it deficient under the third prong of Kansas collateral estoppel law. Plaintiff's claim that the Default Judgment constitutes a finding that collaterally estops Defendants from disputing § 523(a)(2)(A) dischargeability therefore fails.

Additionally, Plaintiff's reliance on the substance of Defendants' alleged false representations to support a § 523(a)(2)(A) claim is misplaced for another reason. Plaintiff alleged the Defendants falsely represented that they had the ability to pay the loan and that they had pending work and incoming receivables from which to repay the loan. Those representations are what Plaintiff alleged "induced" her to loan the money to Defendants. However, such representations are statements respecting Defendants' financial condition and are expressly excluded under § 523(a)(2)(A).[66] These representations are actionable only under § 523(a)(2)(B) and

---

[66] The last phrase of § 523(a)(2)(A) states: ". . . other than a statement respecting the debtor's . . . financial condition," making clear that such statements, whether oral or written, are excluded from the reach of a general fraud-based claim under § 523(a)(2)(A). *See Lamar, Archer & Cofrin, LLP v. Appling,* ___ U.S. ___, 138 S. Ct. 1752, 1761 (2018) (materially false statements respecting debtor's financial condition are governed exclusively by § 523(a)(2)(B) which has heightened nondischargeability requirements; holding that a statement about a single asset can be a statement respecting the debtor's financial

must be in writing. No such writing is in the record or part of the Default Judgment findings, and Plaintiff does not plead nor pursue a nondischargeability claim under § 523(a)(2)(B). Thus, those representations, deemed admitted by Defendants' default, are legally insufficient to support a nondischargeability determination under § 523(a)(2)(A), with or without collateral estoppel.

        4.        § 523(a)(6) Willful and Malicious Injury

Moving to Plaintiff's willful and malicious claim, the Court also finds that the third prong requirement of Kansas collateral estoppel law is not satisfied because Plaintiff failed to allege necessary elements. Notably, neither the state court petition, nor the Default Judgment contained allegations that would satisfy the elements of both a willful act and a malicious injury.[67] As with the § 523(a)(2)(A) claim, the allegation and finding that Defendants may have been found liable only for reckless disregard for the truth of their representations, not intentional harm, is fatal to a claim of willful and malicious injury.[68] For this reason, Plaintiff's claim that Defendants are collaterally estopped from disputing § 523(a)(6) dischargeability also fails.

---

condition); *Kansas Dept. of Labor v. Larson (In re Larson),* Adv. No. 21-5014, 2022 WL 1073699, at *5-6 (Bankr. D. Kan. Apr. 8, 2022) (false representations regarding hours worked and earnings were statements respecting debtor's financial condition and were not actionable under § 523(a)(2)(A)); *Associated Mortgage Corp. v. Weaver (In re Weaver),* 579 B.R. 865, 880 (Bankr. D. Colo. 2018) (a materially false statement in writing respect the debtor's financial condition is mutually exclusive of § 523(a)(2)(A)); *Colorado v. Martinez (In re Martinez),* 609 B.R. 351, 369 (Bankr. D. Colo. 2019) (false statements respecting debtor's financial condition can be pursued only if in writing and brought under § 523(a)(2)(B)).

[67] *See supra,* n.43-48 and associated discussion.

[68] *See e.g., Lavielle v. Acosta (In re Acosta),* Adv. No. 22-5015, Doc. 47 *Order Denying Plaintiffs' Motion for Judgment on the Pleadings* (Bankr. D. Kan. Jan. 10, 2023).

5.      Full and Fair Opportunity to Litigate

Even if there had been specific findings that mirrored the knowledge, intent, and maliciousness requirements of § 523(a), the Court must also determine whether the party against whom an earlier court decision is asserted had a full and fair opportunity to litigate the claim or issue.[69] To do so, a court must question "whether there were significant procedural limitations in the prior proceeding, whether the party had the incentive to litigate fully the issue, or whether effective litigation was limited by the nature or relationship of the parties."[70] A court's decision about whether a party had a full and fair opportunity to litigate "will necessarily rest on the trial court's sense of justice and equity."[71]

In the underlying state lawsuit, Plaintiff alternatively pleaded fraud and breach of contract. In the Plaintiff's state court petition the damages requested were the same for both fraud and breach of contract, with only one exception. The only difference was that Plaintiff prayed for attorney fees of "not less than $1,000" under the fraud claim.[72] Setting aside the impropriety of attorney fees in a Kansas lawsuit absent a contract or a statute that provides for attorney fees for a prevailing party, it is worth noting that Kansas law does not allow their recovery based on fraud for conduct that is identical to the grounds for a simple breach of contract; the basis

---

[69] *Phelps,* 122 F.3d at 1322 (citing *Allen v. McCurry,* 449 U.S. 90, 101(1980)); *In re Lewis,* 271 B.R. at 884; *In re Shore,* 317 B.R. at 542-43.
[70] *In re Shore,* 317 B.R. at 543 (quoting *Sil–Flo, Inc.,* 917 F.2d at 1521); *Stan Lee Media, Inc. v. Walt Disney Co.,* 774 F.3d 1292, 1297 (10th Cir. 2014); *In re Lewis*, 271 B.R. at 884.
[71] *Sil–Flo,* 917 F.2d at 1521 (quoting *Blonder–Tongue Lab'ys, Inc. v. Univ. of Illinois Found.,* 402 U.S. 313, 334 (1971)).
[72] *See* Doc. 23, Ex. A, p. 17, ¶ 27.

must be different.[73] Furthermore, the fraud must have resulted in damages greater than those caused by the breach of contract alone.[74] Other than Plaintiff's claimed attorney fees in the fraud count, the damages sought and awarded for fraud in the Default Judgment were identical to the damages sought for breach of contract.

In this Court's weighing of justice and equity, there has been no showing in the summary judgment record that Defendants had the incentive to fully litigate the fraud allegation, especially considering the conspicuously absent issue of their intent to deceive or defraud Plaintiff. It is reasonable to infer from the record presently before the Court that Defendants might well have concluded they had few, if any, defenses to the breach of contract claim. Other than the claim for attorney fees, the damages sought were identical under the fraud and contract claims, and they may have reasonably believed they had no reason to defend the state lawsuit.[75] For this reason also, summary judgment for Plaintiff is not appropriate on the § 523(a) claims.

---

[73] *Wade v. EMCASCO Ins. Co.,* 483 F.3d 657, 675 (10th Cir. 2007) (citing, *inter alia*, *Brown v. Chaffee,* 612 F.2d 497, 503 (10th Cir.1979) (interpreting Kansas law and concluding "Brown cannot turn an action for breach of contract into an action for fraud by merely alleging reliance on representations that the contract would be performed and detriment from its breach"). *Cf. DeSpiegelaere v. Killion,* 24 Kan. App. 2d 542, 947 P.2d 1039 (1997) (where attorney fees are recoverable under Kansas Consumer Protection Act and the causes of action are dependent on the same facts and intertwined to the point of being inseparable, attorney fees may be recoverable and need not be segregated from the fraud and contract theories); *Schmidt v. Trademark, Inc.,* 60 Kan. App. 2d 206, 2019, 493 P.3d 958 (2021) (Kansas follows the American Rule, prohibiting a court from awarding attorney fees to the prevailing party absent statutory authorization or an agreement of the parties).

[74] *Wade* at 675; *see also Heller v. Martin*, 14 Kan. App. 2d 48, 56, 782 P.2d 1241 (1989).

[75] *See Lewis,* 271 B.R. at 884 ("Because the Debtor could have lost his license based on any one of the complaints or on some combination thereof, he had no incentive to fully litigate the issue of his intent with respect to representations made in only one of the eight complaints.")

D. <u>Application of Collateral Estoppel to October 2, 2015, Order to Enforce Settlement</u>

In addition to the Default Judgment, Plaintiff also argues that the Order, entered on October 2, 2015, is entitled to preclusive effect because Defendants, in the underlying Settlement, stipulated to the findings of fact made by the state court and agreed that the finding of fraud would be nondischargeable. Defendants disagree, stating that they cannot be bound by the terms of the Settlement or the subsequent Order enforcing it, because they did not sign it. So, like the Default Judgment analysis, the Court must look to Kansas law to determine whether the Settlement and Order should be given preclusive effect.[76]

1. Judgment on the Merits

Under the first element of collateral estoppel there must be a prior judgment on the merits which determined the rights and liabilities of the parties on the issue upon ultimate facts as disclosed by the pleadings and the judgment. A judgment based on a settlement agreement adjudicated by a state court may qualify.[77] However, there must be a showing that the decision of the court that adopted a settlement agreement as the basis of its decision was a final judgment, as opposed to simply an interim order in a matter that has not terminated.[78] The information

---

[76] *Balmer Fund, Inc. v. City of Harper*, 294 F. Supp. 3d 1136, 1144-45 (D. Kan. 2018).

[77] *Honeycutt v. Wichita*, 251 Kan. 451, 458, 836 P.2d 1128 (1992) ("[a] voluntary dismissal of a case with prejudice, based on a settlement agreement that is approved by the court and journaled, is a final judgment on the merits."); *see also Thompson-Hayward Chem. Co. v. Cyprus Mines Corp.*, 8 Kan. App. 2d 487, 489, 660 P.2d 973 (1983); *Eberhardt v. Watchous,* No. 65,020, 1991 WL 12018784, at *2 (Kan. Ct. App. Mar. 1, 1991) (citing *Neville v. Hennigh,* 214 Kan. 681, 687-88, 522 P.2d 443 (1974)).

[78] *See Balmer Fund, Inc.,* 294 F. Supp. 3d at 1145.

23

provided by the parties on this question is limited. Plaintiff provided no evidence that the state court case had terminated before the filing of Defendants' bankruptcy. On its face, it is self-described as "Order Granting Plaintiff's Motion to Enforce Settlement" and states in its final paragraph that "Plaintiff's motion is granted." It does not claim to be a final judgment. The evidence on this point is insufficient to support judgment as a matter of law that the first prong of Kansas collateral estoppel law elements was met.

### 2. The Issue Litigated

As discussed above, the third prong of Kansas collateral estoppel law is that the issue litigated must have been determined and necessary to the judgment. Even if the Order was a final judgment, it did not make or reflect any findings that the knowledge, intent, willfulness, and malice elements of §523(a)(2)(A) and (a)(6) were considered and adjudicated. The motion granted was simply that there was an enforceable settlement agreement, and its terms. For this reason, the evidence on this point of Kansas collateral estoppel law is insufficient to support summary judgment.

### E. Judicial and Quasi Estoppel

In addition to collateral estoppel, the Plaintiff claims that the Defendants are judicially and quasi estopped from now arguing that the Default Judgment is dischargeable because they assumed a contrary position in the state court proceedings.

24

1. Judicial Estoppel

The doctrine of judicial estoppel precludes a party who assumes a certain position in a proceeding, and then succeeds relying on that position, from assuming a contrary position because their interests have since changed, especially if this change would prejudice the party who has relied on the earlier position.[79] There are three non-exclusive factors that may inform a court's decision whether to apply the doctrine: (1) a party's subsequent position must be clearly inconsistent with its former position; (2) the party succeeded in persuading a court to accept the former position, so that judicial acceptance of an inconsistent position would create a perception that either the first or second court was misled; and (3) the party seeking to assert a contrary position would gain an unfair advantage in the current litigation if not estopped.[80] The Tenth Circuit only applies the doctrine when other techniques to prevent inconsistent positions are "inadequate to protect the integrity of the judicial system."[81] It is a harsh remedy, and is to be applied narrowly and cautiously. The strict burden of proof to show inconsistency is on the party seeking to invoke judicial estoppel.[82]

The first analysis is whether Defendants' subsequent position that they did not agree to settle under the terms included in the Order is inconsistent with their prior position. At its core, a settlement agreement is a contract, and issues involving

---

[79] *New Hampshire v. Maine*, 532 US 742, 749 (2001); *see also Queen v. TA Operating, LLC*, 734 F.3d 1081, 1087 (10th Cir. 2013).
[80] *Queen*, 734 F.3d at 1087 (citing *Eastman v. Union Pac. R.R.*, 493 F.3d 1151, 1156 (10th Cir. 2007)).
[81] *Vehicle Mkt. Rsch., Inc. v. Mitchell Int'l, Inc.*, 767 F.3d 987, 993 (10th Cir. 2014).
[82] *Id.* at 988, 993.

formation and construction must be resolved using contract law.[83] Creating a contract requires offer, acceptance, and consideration;[84] and Plaintiff bears the burden of proving that all three are present.[85]

The primary question is whether Defendants, explicitly or implicitly, accepted the material terms of the underlying Settlement that they now seek to avoid. Valid acceptance requires the parties to agree to the essential and material terms and outwardly communicate that acceptance in a way that is reasonably understood to mean as such, commonly referred to as a "meeting of the minds."[86] According to Plaintiff, Defendants explicitly accepted the terms of the Settlement during the contempt hearing and in an email conversation between the parties after the hearing, and implicitly agreed by performing under the Settlement after the Order was entered.

Chronologically, the first instance where the parties may have created a binding contract was the contempt hearing; however, Plaintiff did not provide any admissible evidence that would support this allegation. The unsworn statements and arguments of counsel in the brief are not evidence. Moreover, even if an agreement was reached, there is no evidence before this court about its specific terms. Was it an agreement in principle to agree? Was it agreement to some or all of the very lengthy and specific terms outlined in the July 24, 2015, settlement draft

---

[83] *Walters v. Wal-Mart Stores*, 703 F.3d 1167, 1172 (10th Cir. 2013).
[84] *Duling v. Mid Am. Credit Union*, 63 Kan. App. 2d 428, 436, 530 P.3d 737 (2022).
[85] *Unified Sch. Dist. No. 446 v. Sandoval*, 295 Kan. 278, 282, 286 P.3d 542 (2012).
[86] *Duling*, 63 Kan. App. 2d at 436; *see also O'Neill v. Herrington*, 49 Kan. App. 2d 896, 903, 317 P.3d 139 (2014).

sent by Plaintiff's counsel to Defendants? One of those terms included that, "[Defendants] have had the opportunity to discuss this matter and the effects of not discharging this debt with legal counsel familiar with bankruptcy law" and "[Defendants] had the opportunity to seek outside counsel before entering into this agreement and has discussed this agreement with counsel."[87] Since the Defendants were without counsel at the hearing, it seems unlikely they discussed the terms at that time with counsel.

The next situation in which the Defendants may have accepted the Settlement was in a July 31, 2015, email between Defendant and Plaintiff's counsel after the contempt hearing. Plaintiff points out that Defendants, after receiving the proposed Settlement, stated they "don't have a problem with anything in the agreement," and argues this constitutes acceptance.[88] However, that same July 31 email also included a counteroffer from Defendant about changing the payment starting date from August 1 to August 15. Then, on August 25, Plaintiff's counsel sent an email to Defendant saying that "per our agreement today" he had revised the written agreement to make the first payment due on September 15, and also provided "that the parties stipulate to the debt being nondischargeable – meaning that the debt will remain collectable even if a chapter 7 bankruptcy is filed to clean away all other creditors."[89]

---

[87] Doc. 23, Ex. C, ¶ 11-7 and 11-9.
[88] Doc. 23, Ex. B-2, p. 39.
[89] Doc. 23, Ex. B-4, p. 49.  This seems to indicate that the settlement terms letter sent from Plaintiff's counsel to Defendants on July 24, 2015 (the afternoon of the hearing in state

Even if the written agreement's terms had not been changed during negotiations after the hearing, when a signature is a "condition precedent to contract formation," there is no binding contract until the agreement is executed, even if the terms have been agreed upon.[90] These conditions are evidence of the parties' intent.[91]

Based on the Settlement's language and the parties' conduct, the Court could reasonably infer that the parties only intended to be bound if Defendants made the first payment and signed the Settlement. The relevant language in the Settlement letter stated that: "Ms. Johnson will agree to suspend collection efforts against Creason provided Creason does timely and completely pay per this agreement and complete and return this agreement."[92] This condition describes the exact way to accept the Settlement: make the first payment and sign the agreement. Because

---

court where the settlement terms were allegedly agreed – *see,* Doc. 23, Ex. B-1, B-2) was different in some respects from the copy attached as Exhibit 1 to Plaintiff's Motion to Enforce Settlement. The copy provided to the state court (see Doc. 23, Ex. B-1) has the new, September 15 due date for the first payment and language about the debt being nondischargeable that was supposedly agreed upon on August 25, but the letter keeps the same July 24 date.

[90] 17A AM. JUR. 2d *Contracts* § 172; *see generally Lindsey Masonry Co. v. Murray & Sons Constr. Co.*, 53 Kan. App. 2d 505, 511, 390 P.3d 56 (2017); *O'Neill*, 49 Kan. App. 2d at 906.

[91] *Short v. Sunflower Plastic Pipe, Inc.*, 210 Kan. 68, 75, 500 P.2d 39 (1972). In *Short v. Sunflower Plastic,* the Kansas Supreme Court held that the parties did not intend to be bound absent a written contract that was executed by the parties. *Id.* An employee and an employer had an oral employment agreement where the employee orally agreed to the terms of the agreement, which included two relevant conditions: the agreement would be reduced to writing, and "[t]he terms of this agreement shall commence on the date this instrument is signed . . ." *Id.* The court upheld the trial court's finding that, absent a written and executed agreement, a binding contract did not exist because the conditions established "an intent that no enforceable contract would exist until a written, formal instrument was drawn and executed by the parties." *Id.*

[92] Doc. 23, Ex. B, p. 36 ¶ 3. This condition is also stated in the introductory paragraph of Plaintiff counsel's email: "[p]rovided the agreement and timely payments are received, I will suspend collection efforts and legal action against you." *Id.* at 35.

28

Defendants did not complete either requirement, they did not accept the Settlement in this manner, at least not based on the record currently before the Court. A full showing of evidence might prove differently.

A third potential instance for a meeting of the minds could have been after the Order, but Plaintiff does not provide any evidence that the after the order was issued the Defendants complied with the payment terms of the Settlement. Although Defendants made voluntary and "involuntary payments" on the judgment, the Court was not provided with any information that shows they complied with any aspect of the detailed agreement in terms of payment amounts, payment increases, or remitting their tax refunds.[93]

For these reasons, the Court finds that a factual dispute remains about the nature and extent of Defendants' alleged inconsistent positions regarding settlement. It cannot be said that Defendants took an inconsistent position in the state court action when the record lacks evidence of any specific argument they made in the state court. They failed to appear for the Default Judgment, and the evidence before this court (as opposed to arguments of counsel) fails to establish exactly what Defendants did or did not say to the state court in connection with the settlement Order.

In addition, the second factor of judicial estoppel, whether the Defendants convinced a prior court to accept their position and now seek to persuade a different court of a different position, is not satisfied for the same reasons. Likewise, the

---

[93] Doc. 23, p. 36, ¶ 4(A)-(D).

third factor – that Defendants would be given an unfair advantage, is lacking. A denial of summary judgment based on judicial estoppel still provides a plaintiff in an adversary proceeding the full opportunity to prove, with admissible evidence, the merits of its claim. Therefore, the "harsh remedy" of judicial estoppel would be inappropriate here.

### 2. Quasi Estoppel

Under Kansas law, quasi estoppel applies where a party has previously taken a position which is so inconsistent with its current one that it would be unconscionable to allow it.[94] This doctrine may apply when a party has full knowledge or sufficient notice or means of knowledge of their rights and material facts but remains inactive or silent in a manner that amounts to acquiescence that interferes with another party's situation.[95] Unlike judicial estoppel, quasi estoppel does not require a court to detrimentally rely on a party's past inconsistent position.[96]

Plaintiff has not provided evidence that would support the conclusion that the Defendants' past position is unconscionable. Absent the arguments and non-evidentiary statements of counsel, the evidence currently shows a factual dispute

---

[94] *See In re Gateway Ethanol, L.L.C.*, 415 B.R. 486, 496-97 (Bankr. D. Kan. 2009); *State v. Waterman*, No. 119,425, 2019 WL 3850631, at *5 (Kan. Ct. App. Aug. 16, 2019) (citing *Harrin v. Brown Realty Co.*, 226 Kan. 453, 458-59, 602 P.2d 79 (1979)). Like collateral estoppel, federal courts apply state law when determining whether quasi estoppel principles apply. *See generally In re Gateway Ethanol, L.L.C.*, 415 B.R. at 496-97 (applying Kansas law); *Team Indus. Servs., Inc. v. Zurich Am. Ins. Co.*, No. 19-2710, 2021 WL 492882, at *11-12 (D. Kan. Feb. 10, 2021) (applying Kansas law).

[95] *Schiffelbein v. Sisters of Charity*, 190 Kan. 278, 282, 374 P.2d 42 (1962) (internal citations omitted).

[96] *In re Gateway Ethanol, L.L.C.*, 415 B.R. at 496-97.

about what position Defendants previously took regarding the terms of any settlement, especially as those alleged settlement terms related to issues of intent and malice necessary for a §532(a) finding. For the same reasons as discussed above, the record before this Court does not establish that Defendants' current position is inconsistent with their previous one, so quasi estoppel is not an appropriate basis for summary judgment.

## IV.     CONCLUSION

The summary judgment record currently before this Court lacks evidence sufficient to prove, as a matter of law, that collateral estoppel, judicial estoppel, and quasi estoppel operate to bar Defendants from presenting potential defenses in this nondischargeability action. Plaintiff's Motion for Summary Judgment is DENIED.

IT IS SO ORDERED.

# # #